**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
:
BRADLEY BAKER, :
:
                Plaintiff, :
:
  -against- : 03 CV 6258 T(P)
:
THE HOME DEPOT, :
:
                Defendant. :
:
---------------------------------------------------------------x


# DEFENDANT HOME DEPOT U.S.A, INC.'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

                                      Stephanie Caffera (SC-4726)
                                      Nixon Peabody LLC
                                      Clinton Square
                                      P.O. Box 31051
                                      Rochester, New York 14603

                                        Debra Morway (DM-2629)
                                        Morgan, Lewis & Bockius LLP
                                        101 Park Avenue
                                        New York, New York 10178

## PRELIMINARY STATEMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant The Home Depot U.S.A., Inc. ("Defendant" or "Home Depot") respectfully submits this Memorandum of Law in support of its motion for summary judgment.

Plaintiff Bradley Baker ("Plaintiff") has filed the instant action pro se, alleging that Home Depot discriminated against him because of his religious beliefs in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"). Plaintiff has failed, however, to proffer any evidence that would support a finding of liability against Home Depot. The record shows that there are no genuine issues of material fact in dispute and, construing the facts in the light most favorable to Plaintiff, Home Depot is entitled to summary judgment on Plaintiff's claim.

Specifically, Plaintiff's claim that Home Depot failed to accommodate his religious beliefs by requiring him to work a portion of some Sundays must be dismissed because Home Depot made a good faith effort to accommodate his Sunday worship. Moreover, Plaintiff's requested accommodation, never working on Sundays, was overbroad and further would have created an undue hardship for Home Depot. While Home Depot has the utmost respect for its employee's religious beliefs, as demonstrated by its efforts to accommodate Plaintiff's desire not to work on Sundays, as described below, Plaintiff was simply unwilling to compromise in any way. Accordingly, Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

## STATEMENT OF FACTS

Plaintiff was initially hired by Home Depot in March 2001 as a full-time Sales Associate in the Floor & Wall Department of its Auburn, Massachusetts store. Transcript of Deposition of

1

Plaintiff Bradley Baker, dated January 22, 2004 ("Pl. Dep.") at 33, 53.[1/] All Home Depot full-time associates are required to work a fully-flexible work schedule in order to meet the fluctuating business needs based on customer peak times. Affidavit of Colleen Vorndran ("Vorndran Aff.") ¶ 8. At the start of Plaintiff's employment, he completed an availability worksheet which indicated that he was able to work the required fully-flexible schedule. Morway Aff. Exh B. Significantly, Plaintiff did not indicate any specific days of the week on which he would not be available to work. Id. Plaintiff did not have any complaints about his employment in the Auburn store and worked any day of the week he was assigned. Pl. Dep. at 22

In or around August 2001, Plaintiff relocated from Massachusetts to New York to be closer to his fiancée. Pl. Dep. at 16, 53. Plaintiff determined that Home Depot's Henrietta, New York store would be closest to his new home and subsequently interviewed for a position there. Pl. Dep. at 55-56. After Plaintiff accepted a position in the Henrietta store, he arranged for his personnel file to be transferred to the new store. Pl. Dep. at 56. Plaintiff officially began working at the Henrietta store on August 13, 2001. Pl. Dep. at 16, 57. Plaintiff's salary did not change as a result of his relocation and his level of seniority was not affected. Pl. Dep. at 35. Plaintiff also elected not to receive medical benefits from Home Depot because he was going to be covered under his wife's insurance plan. Pl. Dep. at 36.

Plaintiff has considered himself to be a Christian since he was 18 or 19 years old. Pl. Dep. at 18. The first Christian church that Plaintiff belonged to was a nondenominational church known as "Rehma Christian Fellowship" located in Olean, New York. Pl. Dep. at 19-20.

---

[1/] Pages from Plaintiff's deposition transcript are attached in sequential order to the Affidavit of Debra Morway, Esq. ("Morway Aff") as Exh. A.

Plaintiff was a member of this church until he moved to Massachusetts in March 2001.  Id. Plaintiff did not belong to a church during the approximately 5 months he lived in Massachusetts because he considered his living situation to be temporary.  Pl. Dep. at 20-21.  After Plaintiff relocated back to New York, he joined a nondenominational church known as "Gospel Church" and is still a member of that church today.  Pl. Dep. at 19.  Plaintiff generally attends services at Gospel Church on Sundays from approximately 10:30 a.m. to approximately 1 p.m.  Pl. Dep. at 22.  Following the services, Plaintiff typically socializes with other congregants and then goes either to his mother's house or his mother-in-law's house for lunch or dinner and generally "spend[s] time with family."  Pl. Dep. at 24.

Prior to working at Home Depot, Plaintiff held various positions with several employers, some of which required him to work on Sundays.  Pl. Dep. at 27-31, 39-40.  During the time that Plaintiff was a member of Rehma Christian Fellowship, if Plaintiff had to work on a Sunday, he would simply attend church services on Thursday evening.  Pl. Dep. at 40.  Plaintiff's current church, Gospel Fellowship, also holds services on Thursday evenings as well as Sunday mornings.  Pl. Dep. at 41.  Plaintiff, however, chooses not to attend services on Thursdays because it is less convenient for him.  Id.

In August 2001, when Plaintiff began working at Home Depot's Henrietta store, the Store Manager was Michael Poss.  Pl. Dep. at 55.  Plaintiff informed Mr. Poss that he would not work on Sundays because of his religious beliefs and his desire to attend church services.  Pl. Dep. at 60.  Mr. Poss told Plaintiff that Plaintiff would need to discuss any scheduling issues with the person responsible for setting employee schedules.  Id.  Plaintiff subsequently discussed this issue with his Department Supervisor, Shawn Forness, who told Plaintiff that as long as he was preparing the schedules, he had no problem with Plaintiff not working on Sundays.  Pl. Dep. at

61. In or around March 2002, Michael Woodman became the Department Supervisor for Plaintiff's department and took over responsibility for preparing the schedules. Pl. Dep. at 64. Mr. Woodman also did not schedule Plaintiff to work on Sundays. <u>Id.</u>

On or about September 1, 2002, Colleen Vorndran became the manager of the Henrietta store.[2] Vorndran Aff. ¶ 2. Plaintiff never approached Ms. Vorndran to discuss the fact that, due to his religious beliefs, he did not want to work on Sundays. Pl. Dep. at 72-73. Indeed, Plaintiff simply "assumed" that nothing would change. Pl. Dep. at 74. Ms. Vorndran, however, determined that, in order to better meet the business needs of the store on weekends, the store's busiest days, she needed all full-time sales associates, including Plaintiff, to have full scheduling flexibility. Vorndran Aff. ¶¶ 4, 8. This was particularly important given the fact that the Henrietta store is located in a low volume market with minimum overall staffing hours allocated to the store. <u>Id.</u> ¶ 4. As a result of these factors, Ms. Vorndran determined that allowing a full-time associate to consistently have either Saturday or Sunday off would not adequately meet the business needs of the store, nor would it be fair to the other full-time associates who would have to work extra weekend hours. <u>Id.</u> ¶ 8.

In order to meet the store staffing requirements, Ms. Vorndran gathered information on the scheduling availability of all of the associates and entered this information into a computer program. According to the availability worksheet in Plaintiff's personnel file, Plaintiff was available to work any day of the week. Vorndran Aff. ¶¶ 5, 6. As a result, Plaintiff was entered into the computer system as having full scheduling flexibility. Vorndran Aff. ¶ 6. Ms. Vorndran then learned from her Operations Assistant Manager that Plaintiff did not work on Sundays

---

[2] When Mr. Poss left the Henrietta store in December 2001, John Atkinson served as Store Manager until Ms. Vorndran took over. Pl. Dep. at 70.

under the prior Store Manager. Vorndran Aff. ¶ 7; Morway Aff. Exh C. There was no documentation, however, to confirm such an arrangement. Id. Thus, Ms. Vorndran subsequently had a verbal counseling session with Plaintiff in which she explained to him the fact that she needed all full-time associates to have full flexibility in their schedules. Vorndran Aff. ¶ 9; Morway Aff. Exh. C. Plaintiff, however, responded that Sunday was "family day" and that he attended church on Sunday.[3] Pl. Dep. at 78; Vorndran Aff. ¶ 9.

Given the information regarding scheduling availability on Plaintiff's Availability Worksheet and in the store's computer, however, Plaintiff was eventually scheduled to work on Sunday October 13, 2002. Vorndran Aff. ¶ 10; Morway Aff. Exh. D. Instead of reporting to work as scheduled, Plaintiff called the store that day and stated that he was not going to report to work. Pl. Dep. at 80, 91; Morway Aff. Exh. D. Accordingly, the store was short-staffed on that day. Vorndran Aff. ¶ 10. On October 15, 2002, Ms. Vorndran and Human Resources Manager Patti O'Leary had another counseling session with Plaintiff to discuss this unexcused absence.[4] Vorndran Aff. ¶ 10; Morway Aff. Exh. E; see also Pl. Dep. at 81. During this meeting, Ms. Vorndran reiterated her position that all full-time associates are required to be fully flexible with respect to their availability. Vorndran Aff. ¶ 11; Morway Aff. Exh. E; Pl. Dep. at 84. She reminded Plaintiff that the availability worksheet, which he completed upon his hire, indicated that he was available to work on any day at any time. Vorndran Aff. ¶ 11. Plaintiff, however,

---

[3] Plaintiff's recollection of the conversation during this meeting is slightly different. See Pl. Dep. at 75-77. As will be explained in detail below, however, none of the differences are material and should not impact the instant motion.

[4] Once again, Plaintiff's description of this meeting varies slightly. See Pl. Dep. at 81-82. The differences, however, are not material and do not impact the instant motion.

5

stated that he could not work on Sundays because Sunday was "[his] time" and he wanted to attend religious services. Pl. Dep. 84. When Plaintiff admitted that the services were in the morning, Ms. Vorndran and Ms. O'Leary suggested that Plaintiff work only the closing shifts on Sundays, leaving him free to attend morning services. Vorndran Aff. ¶ 12; Morway Aff. Exh. E; Pl. Dep. at 84-85. Plaintiff, however, refused this suggested accommodation, saying that Sunday was "family day." Id.

Ms. Vorndran and Ms. O'Leary suggested other possible accommodations for Plaintiff as well. Specifically, they suggested that Plaintiff switch to part-time status which would allow him to control the days and hours he would be available.[5] Vorndran Aff. ¶ 13; Morway Aff. Exh. E; Pl. Dep. at 86. Plaintiff refused this accommodation as well, saying that he needed the guarantee of a 40 hour work week. Vorndran Aff. ¶ 13; Morway Aff. Exh. E; Pl. Dep. at 87. Ms. Vorndran and Ms. O'Leary also suggested that Plaintiff find another sales associate to swap shifts with him, yet, once again, Plaintiff refused the suggested accommodation and stated that if the store continued to schedule him to work on a Sunday, he would continue to "call off" every time.[6] Vorndran Aff. ¶ 13; Morway Aff. Exh. E. In fact, Plaintiff did not believe that he needed to accept any of Home Depot's attempts to accommodate him. Pl. Dep. at 96-97. In Plaintiff's opinion, he was entitled to the entire day off without any requirement to compromise. Id.

Ms. Vorndran advised Plaintiff that his failure to report to work on his scheduled days would constitute a flagrant disrespect of managerial policy and that his "call offs" were considered unexcused absences which were unacceptable. Vorndran Aff. ¶ 14; Morway Aff.

---

[5] Home Depot cannot, however, guarantee that part-time associates will work 40 hours per week since they are not required to be fully-flexible. Vorndran Aff. ¶ 13.

6

Exh. E. Plaintiff responded that he was going to do what he needed to do and that management should do what it needed to do. Id. In Ms. O'Leary's opinion, Plaintiff was disrespectful to Ms. Vorndran during this meeting and appeared to be "goading" her to fire him. Morway Aff. Exh. E.

Following this meeting, Plaintiff was scheduled to work on Sunday October 20, 2002. Vorndran Aff. ¶ 15; Morway Aff. Exh. F; Pl. Dep. at 93. Plaintiff, however, failed to report to work again. Vorndran Aff. ¶ 15; Morway Aff. Exh. F. This was Plaintiff's third unexcused absence since July 2002. Id. As a result of the unexcused absences and Plaintiff's insubordinate attitude and flagrant disregard for his superior's instructions and schedule, Ms. Vorndran decided to terminate Plaintiff's employment. Vorndran Aff. ¶ 16; Morway Aff. Exh. E. On October 29, 2002, Ms. Vorndran and Ms. O'Leary met with Plaintiff and told him his employment was being terminated because of his unexcused absences and disrespect for management. Id.

## ARGUMENT

### I. THE STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment "shall be rendered forthwith" if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323 n.4 (1986). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the . . . pleadings," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

---

[6] Plaintiff does not recall Ms. Vorndran and Ms. O'Leary suggesting that he swap shifts with a co-worker. Pl. Dep. at 87-88. As will be explained below, however, this factual issue is not material since Plaintiff's claims should still be dismissed on other grounds.

7

Mere conclusory statements, conjecture or speculation cannot, by themselves, create a genuine issue of material fact sufficient to avoid summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996); Boyd v. Presbyterian Hosp., 160 F. Supp. 2d 522, 534 (S.D.N.Y. 2001). This applies no less to discrimination cases than to commercial or other areas of litigation. Ashton v. Pall Corp., 32 F. Supp. 2d 82, 87 (E.D.N.Y. 1999). Courts within the "Second Circuit have not hesitated to grant defendants summary judgment in such cases where . . . plaintiff has offered little or no evidence of discrimination." Scaria v. Rubin, No. 94 Civ. 3333, 1996 WL 389250, at *5 (S.D.N.Y. July 11, 1996), aff'd, 117 F.3d 652 (2d Cir. 1997). Indeed, it is now "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). This is true even where a plaintiff is proceeding pro se. See, e.g., Rikhy v. AMC Computer Corp., No. 01 Civ. 7007, 2003 WL 1618529, at *1 (S.D.N.Y. Mar. 28, 2003); Sitkiewicz v. Initial Servs. U.S.A., No. 96 Civ. 8543, 1999 WL 728643, at *4 (S.D.N.Y. Sept. 17, 1999) (citation omitted) ("Even a pro se litigant . . . must present the Court with more than a 'scintilla of evidence' demonstrating the validity of the claim."), aff'd, 213 F.3d 626 (2d Cir. 2000).

In the instant case, Plaintiff has failed to provide any evidence, other than his own conclusory, unsubstantiated allegations, to support his claim that he was in any way subjected to discriminatory treatment. Accordingly, Defendant's motion for summary judgment should be granted.

## II. PLAINTIFF'S RELIGIOUS DISCRIMINATION CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW.

Title VII prohibits adverse employment actions against an employee on the basis of the employee's religious beliefs unless the employer can show that a reasonable accommodation of

the employee's beliefs would cause an undue hardship for the employer's business. 42 U.S.C. § 2000e(j); Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68 (1986). In order to establish a *prima facie* case of religious discrimination, a plaintiff bears the burden of demonstrating the following elements: (1) he has a bona fide religious belief or practice that conflicts with a requirement of his employment; (2) the employer was aware of his belief or practice; and (3) he was disciplined for failing to comply with the conflicting employment requirement. Durant v. NYNEX, 101 F. Supp. 2d 227, 233 (S.D.N.Y. 2000); Gay v. S.U.N.Y. Health Sci. Ctr., No. 96 Civ. 5065, 1998 WL 765190, at *5 (E.D.N.Y. July 22, 1998); Sable v. Stickney, No. 91 Civ. 8038, 1993 WL 267337, at **7-8 (S.D.N.Y. July 13, 1993). If the Plaintiff succeeds in establishing his *prima facie* case, the burden then shifts to the employer to demonstrate that: (1) the employer made a good faith effort to accommodate the employee's religious beliefs; or (2) the employer was not able to reasonably accommodate the employee's religious beliefs without experiencing an undue hardship on its business. Id.

It is unlikely, given Plaintiff's deposition testimony, that Plaintiff could establish the type of bona fide religious belief sufficient to satisfy the first element of the *prima facie* case. While Plaintiff clearly maintains a religious belief that requires him to attend church services on Sundays, the manifestation of that belief does not entitle him to never work any hours on Sundays. Plaintiff clearly testified in his deposition that he generally attends church services from approximately 10:30 a.m. to approximately 1:00 p.m. Pl. Dep. at 22. Plaintiff, however, further testified that following the services, he socializes with other congregants and then goes either to his mother's house or his mother-in-law's house for lunch or dinner and generally "spend[s] time with family." Pl. Dep. at 24. Plaintiff's activities following services have nothing to do with his religious belief or the need to worship on Sundays. Indeed, Plaintiff

9

testified that, in the past, he held jobs that required him to work on Sundays and Plaintiff did so without issue. Pl. Dep. at 27-31, 39-40. This significant admission vitiates Plaintiff's claim that he maintains a bona fide religious belief entitling him to never work on Sundays.

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of religious discrimination, Defendant is nevertheless entitled to summary judgment because it offered Plaintiff several reasonable accommodations for his religious beliefs. Moreover, assuming, *arguendo*, that Defendant did not offer a reasonable accommodation, Plaintiff's requested accommodation would have created an undue hardship for Defendant.

### A. Defendant Offered Plaintiff Several Reasonable Accommodations.

Plaintiff's claim of religious discrimination should be dismissed because Home Depot made a good faith effort to accommodate Plaintiff's religious beliefs. Plaintiff appears to allege that, because Home Depot did not agree to his request that he <u>never</u> be scheduled to work on a Sunday, Home Depot failed to offer him a reasonable accommodation.[7] It is well-settled, however, that in order to avoid liability for religious discrimination under Title VII, an employer is not required to offer the specific accommodation that the employee prefers. <u>Cosme v. Henderson</u>, 287 F.3d 152, 158 (2d Cir. 2002); <u>Durant</u>, 101 F. Supp. 2d at 234. Moreover, as long as the employer demonstrates that a reasonable accommodation was, in fact, offered, it need not further demonstrate that the employee's desired accommodation would have created an undue hardship. <u>Ansonia</u>, 479 U.S. at 68.

In the instant case, it is undisputed that Home Depot offered Plaintiff at least two alternative accommodations. First, Home Depot suggested that Plaintiff work only the closing

---

[7] Indeed, the very definition of the word "accommodation" implies a need for both sides compromise rather than total submission by one side.

shift on Sundays, which would allow Plaintiff more than sufficient time to attend religious services.[8] Vorndran Aff. ¶ 12; Morway Aff. Exh. ¶ E; Pl. Dep. at 84-85. Indeed, courts in this Circuit have uniformly held that an offer of flexible work hours constitutes a reasonable accommodation. See, e.g., Gay, 1998 WL 765190, at *7 (offering to change plaintiff's hours to an early morning shift which would permit plaintiff to attend religious services later in the day is a reasonable accommodation).

Significantly, this precise issue was litigated in George v. Home Depot, Inc., No. 00 Civ. 2616, 2001 WL 1558315 (E.D. La. Dec. 6, 2001), aff'd, 51 Fed. Appx. 482 (5th Cir. 2002), a case with virtually identical facts. In George, the plaintiff alleged that her religious observance of the Sabbath prohibited her from working on Sundays. Home Depot offered to accommodate the plaintiff by scheduling her shifts around her church services. The plaintiff, however, insisted that she could not work at all on Sundays because of her religious belief that Sunday was a day of rest, prayer, and "family time." The court ruled that Home Depot's offer of flexible working hours on Sundays, which would have permitted the plaintiff to attend church services, was a reasonable accommodation. Id. at *8. The court explicitly stated that having an employee "dictate the days when she would work" was not reasonable. Id. Since the plaintiff "refused to accept the accommodation offered [and] refused to consider any accommodation except on her

---

[8] Home Depot also asserts that it offered Plaintiff the opportunity of finding another sales associate to swap shifts with him. Vorndran Aff. ¶ 13; Morway Aff. Exh. E. While Plaintiff disputes the fact that this offer was made, courts have found such a shift swap to be a reasonable accommodation as well. See, e.g., Durant, 101 F. Supp. 2d at 234 (employer's offer to employee to swap shifts on an ongoing basis to accommodate observance of the Sabbath was a reasonable accommodation); EEOC v. Delta Airlines, Inc., No. 97 Civ. 5646, 2002 WL 1447582, at *7 (E.D.N.Y. June 26, 2002) (stating that Defendant's offer of a shift swap to accommodate observance the Sabbath, "while potentially imperfect, is the exact sort of reasonable accommodation contemplated").

terms," the court granted Home Depot summary judgment on the employee's religious discrimination claim. Id.

In the instant case, Home Depot offered the exact same accommodation to Plaintiff that it offered in George. This accommodation would have allowed Plaintiff to attend church services in the morning. The mere fact that this option was not what Plaintiff was looking for is insufficient to render it an unreasonable accommodation.[9] Thus, as the court ruled in George, Home Depot's offer to Plaintiff to work only the closing shift on Sundays was a reasonable accommodation as a matter of law.

It is also undisputed that Home Depot offered to switch Plaintiff to part-time status which would have allowed him to control the days and hours during which he would be available to work. Pl. Dep. at 86; Vorndran Aff. ¶ 13; Morway Aff. Exh. ¶ E. Plaintiff, however, refused this accommodation because he wanted a guarantee that he would still work 40 hours per week. Pl. Dep. at 87; Vorndran Aff. ¶ 13. Significantly, a change to part-time status would have had no detrimental effect on Plaintiff's employment. First, because Plaintiff had elected not to take insurance benefits, part-time employment would not have deprived him of any existing coverage. Pl. Dep. at 36. Second, while it is true that Home Depot would not guarantee that Plaintiff would continue to work 40 hours per week as a part-time employee, it is entirely speculative to say that Plaintiff's hours, and, as a result his compensation, would have <u>actually</u> been reduced. The Second Circuit has recognized that an accommodation is not deemed unreasonable unless there is a <u>proven</u> diminution in compensation or benefits. Cosme, 287 F.3d at 160 (finding no basis to conclude that proposed accommodation was unreasonable where plaintiff could not prove that he

---

[9] Significantly, Plaintiff testified that when he worked for a previous employer, if he had to work on a Sunday, he would simply attend church services on Thursday evening instead of Sunday morning. Pl. Dep. at 40.

12

would have suffered a discernible loss). Since Plaintiff has no evidence that his compensation or benefits would have been reduced by switching to part-time status, there is no basis to deem Home Depot's offer an unreasonable accommodation. Moreover, several courts have ruled that transferring an employee to an alternative position can be a reasonable accommodation, even if it results in reduced compensation to the employee. See, e.g., Vaughn v. Waffle House, Inc., 263 F. Supp. 2d 1075, 1083 (N.D. Tex. 2003) (holding that employer's offer of an alternative position which resulted in reduced compensation was a reasonable accommodation, especially considering that the number of hours employee was required to work was correspondingly reduced as well);[10] Eversley v. MBank Dallas, 843 F.2d 172, 176 (5th Cir. 1988) (holding that offering plaintiff an alternative position with a lower rate of compensation was not unreasonable "simply because [it] involve[d] some cost to the employee"); Bruff v. N. Miss. Health Srvs., Inc., 244 F.3d 495, 502 n.23 (5th Cir. 2001) (holding that a proposed accommodation which required an employee to take a significant reduction in salary was not unreasonable).

Finally, as discussed above, Plaintiff failed to work with Home Depot to try to find a mutually acceptable accommodation. Indeed, Plaintiff testified in his deposition that he did not believe that he needed to compromise. Pl. Dep. at 96-97. This utter failure to cooperate with Home Depot further undermines Plaintiff's claim of religious discrimination. See, e.g., Hussein v. Pierre Hotel, No. 99 Civ. 2715, 2001 WL 406258, at *5 (S.D.N.Y. Apr. 20, 2001) (granting summary judgment where, inter alia, plaintiff did not cooperate with or assist employer in accommodating him), aff'd, 25 Fed. Appx. 84 (2d Cir. 2002), cert. denied, 537 U.S. 978 (2002); Ansonia, 479 U.S. at 69 (citation omitted) ("bilateral cooperation is appropriate in the search for

---

[10] As in Vaughn, any possible reduction in Plaintiff's compensation as a result of a switch to part-time status would have also resulted in a reduction in Plaintiff's hours.

13

an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business"). Plaintiff simply refused to consider any possible accommodation other than Home Depot agreeing to never schedule him to work on a Sunday. Such an inflexible position is not acceptable under Title VII. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 80-81 (1977) (stating that Title VII does not require an employer to accommodate such an inflexible position as allowing the employee to determine what days he will and will not work); Ansonia, 479 U.S. at 73 (simply because a proposed accommodation involves some cost to the employee does not render it unreasonable). In light of the foregoing, Plaintiff's religious discrimination claim should be dismissed.

### B. Plaintiff's Requested Accommodation Would Have Caused an Undue Hardship for Home Depot.

The extent of undue hardship on the employer's business as a result of a plaintiff's requested accommodation is only at issue where the employer did not offer a reasonable accommodation. Ansonia, 479 U.S. at 68-69. Thus, if the Court finds that Home Depot's proposed accommodations were reasonable, it need not determine whether Plaintiff's requested accommodation would have caused an undue hardship. Notwithstanding this fact, and assuming, *arguendo*, that Home Depot did not offer a reasonable accommodation, Plaintiff's claim should still be dismissed because Plaintiff's desired accommodation would have caused an undue hardship.

The Supreme Court has narrowly interpreted the duty to reasonably accommodate an employee's religious beliefs, holding that any accommodation imposing "more than a de minimis cost" on the employer amounts to an undue hardship. Hardison, 432 U.S. at 84. The Hardison Court recognized that a "de minimis cost" involves not only monetary concerns but also the burden on the employer in conducting its business. Id. at 84 n.15.

As discussed in detail above, when Ms. Vorndran took over as Store Manager of the Henrietta store, she determined that she needed all full-time employees to have full scheduling flexibility on weekends, the store's busiest days, in order to better meet the needs of Home Depot's customers. Vorndran Aff. ¶ 8. Moreover, the Henrietta store is located in a particularly low volume market with minimum staffing hours. Vorndran Aff. ¶ 4. As a result, in Ms. Vorndran's opinion, allowing a full-time associate to permanently have a particular day of the weekend off did not meet the business needs of the store, nor would it have been fair to the other sales associates who would have to work extra weekend days in his stead. Vorndran Aff. ¶ 8. Indeed, Plaintiff cannot dispute the fact that other Home Depot employees would have been required to adjust their work schedules in order to accommodate Plaintiff's request to never work on Sundays. In light of these facts, Plaintiff's requested accommodation would have constituted an undue hardship for Home Depot. See, e.g., Hardison, 432 U.S. at 81 (holding that reasonable accommodation does not mean that "an employer must deny the shift and job preference of some employees ... in order to accommodate or prefer the religious needs of others"); Vaughn, 263 F. Supp. 2d at 1084-85 ("Where, as here, an employer's accommodation would force other employees against their wishes, to modify their work schedules to accommodate the religious beliefs of a particular employee, the same constitutes an undue hardship"); Lee v. ABF Freight Sys., Inc., 22 F.3d 1019, 1023 (10th Cir. 1994) (holding that an employer is not required to rearrange employee schedules or force employees to trade shifts to accommodate the religious practices of an employee).

Indeed, "[t]he mere possibility of an adverse impact on co-workers" is sufficient to constitute an undue hardship. Weber v. Roadway Express, Inc., 199 F.3d 270, 274 (5th Cir. 2000) (granting summary judgment where "skipping over" plaintiff in scheduling delivery runs

15

could adversely affect other drivers in terms of time-off and compensation). Moreover, Title VII "does not require [the employer] to wait until it felt the effects" of the employee's proposed accommodation before it can establish an undue hardship. Weber, 199 F.3d at 275; see also Vaughn, 263 F. Supp. 2d at 1084 ("Title VII does not require an employer to actually incur accommodation costs before asserting that they are more than *de minimis*.").

In George, Home Depot argued that having an employee who would never work on Sundays would cause an undue hardship given the nature of its business. The court granted summary judgment, in part, on this basis. George, 2001 WL 1558315, at *8 ("Home Depot is not obligated to require other employees to exchange shifts with plaintiff because that would impinge on those other employees' own religious and non-religious shift preferences.").

In the instant case, Plaintiff will likely argue that his requested accommodation could not have caused an undue hardship because under the prior Store Manager, Plaintiff was never scheduled to work on Sundays. This argument, however, is insufficient to defeat Home Depot's assertion of an undue hardship. See, e.g., Vaughn, 263 F. Supp. 2d at 1084-85. In Vaughn, the plaintiff, district manager of a restaurant chain, requested every Saturday off as an accommodation of his religious beliefs. The employer attempted to accommodate the plaintiff by permitting him to take off every other Saturday and the plaintiff "experimented" with this accommodation for a few weeks before ultimately deciding that it was unsatisfactory. Id. at 1078. The court rejected the plaintiff's argument that allowing him to have every Saturday off would not cause an undue hardship because his restaurants remained profitable and encountered no staffing problems when he was permitted to have off on Saturdays. Id. at 1084. In granting summary judgment for the employer, the court noted that "management decisions rest with the employer" and that Title VII "does not require an employer to impose additional responsibilities

16

on an employee's coworkers [sic] in accommodating that employee's religious beliefs." Id. at 1084-85.

Finally, it is well-settled that a court will not "interfere with an employer's business judgment so long as that judgment is not exercised for discriminatory reasons." Fitzpatrick v. N.Y. Cornell Hosp., No. 00 Civ. 8594, 2003 WL 102853, at *7 (S.D.N.Y. Jan. 9, 2003). Home Depot is entitled to make decisions on how to run its stores and Ms. Vorndran, as Store Manager, was entitled to decide on appropriate staffing levels. Her decision that acceding to Plaintiff's demands would be an undue hardship, therefore, should not be questioned. See, e.g., Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 106 (2d Cir. 1989) ("Certainly the court could not merely substitute its judgment for that of a business judgment . . . ."); Gordon v. Fenniman, No. 94 Civ. 6972, 1998 WL 126062, at *6 (S.D.N.Y. Mar. 19, 1998) ("This Court is not responsible for measuring the wisdom of [the employer's] business decision"). Accordingly, granting Plaintiff his requested accommodation would have been an undue hardship and Defendant is entitled to summary judgment as a matter of law.

## CONCLUSION

Home Depot has the utmost respect for its employee's religious beliefs as demonstrated by its efforts to accommodate Plaintiff as described above. Plaintiff, however, was simply unwilling to compromise in any way. Accordingly, for all of the foregoing reasons, Defendant respectfully requests that this Court grant Defendant's motion for summary judgment and dismiss Plaintiff's claims in their entirety with prejudice.

Dated: April 22, 2004
       New York, New York       NIXON PEABODY LLP


By: /s/ Stephanie Caffera
     Stephanie Caffera (SC-4726)

     Clinton Square
     P.O. Box 31051
     Rochester, New York 14603
     (585) 263-1000

     MORGAN, LEWIS & BOCKIUS LLP

     Debra Morway (DM-2629)
     101 Park Avenue
     New York, New York 10178
     (212) 309-6000

     ATTORNEYS FOR DEFENDANT
     HOME DEPOT U.S.A., INC.

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 1

ARGUMENT ............................................................................................................................. 7

I.      THE STANDARD OF REVIEW ................................................................................. 7

II.     PLAINTIFF'S RELIGIOUS DISCRIMINATION CLAIM SHOULD BE
DISMISSED AS A MATTER OF LAW........................................................................ 8

       A.    Defendant Offered Plaintiff Several Reasonable Accommodations..................... 10

       B.    Plaintiff's Requested Accommodation Would Have Caused an Undue
            Hardship for Home Depot.................................................................................... 14

CONCLUSION........................................................................................................................ 18